HUGH M. MORRIS, executor under the last Will and Testament of Willard Saulsbury, deceased, appellant below, plaintiff in error, *v.* THE STATE SCHOOL TAX DEPARTMENT OF THE STATE OF DELAWARE, appellee below, defendant in error.

(*October* 29, 1929.)

WOLCOTT, Chancellor, RICHARDS and RODNEY, J. J., sitting.

*James I. Boyce* for plaintiff in error.

*William H. Foulk* for defendant in error.

Supreme Court, June Term, 1928.

(No. 156, May Term, 1927),

RICHARDS, J., delivering the opinion of the court:

The annual net income return, for the year 1924, filed by the Honorable Willard Saulsbury, showed general deductions amounting to $46,304.45, which the taxable claimed he was entitled to make from his gross income. Said deductions included the sum of

$32,300 which represented the loss taxable claimed to have sustained from certain stock transactions arising from the purchase of two hundred shares of preferred stock for the sum of $13,800 and eleven hundred shares of common stock for the sum of $30,000, of Havana Commercial Company, the aggregate cost of both preferred and common stock being $43,800.

All of said stock was exchanged during the year 1902 for stock of the Havana Tobacco Company, the number of shares thereof being one hundred and twenty shares of preferred and five hundred and twenty shares of common. In 1924, there was a reorganization of the affairs of Havana Tobacco Company, the taxable receiving in exchange for both the common and preferred stock held by him, one hundred and seventy-two shares of the common stock of Cuban Tobacco Company, the exchange being made upon the basis of one share of Cuban Tobacco Company common stock for each share of Havana Tobacco Company preferred stock, and one share of Cuban Tobacco Company common stock for each ten shares of Havana Tobacco Company common stock. The number of shares of Cuban Tobacco Company thus received was one hundred and seventy-two which was represented by two certificates, one for one hundred shares and the other for seventy-two shares. The Explanation of Stock transactions which accompanied the Annual Return filed with the State School Tax Department, set forth that the certificate for one hundred shares of Cuban Tobacco Company represented one hundred shares of the preferred stock of Havana Tobacco Company and that the certificate for seventy-two shares of Cuban Tobacco Company represented twenty shares of Havana Tobacco Company preferred and five hundred and twenty shares of Havana Tobacco Company common. In 1924 the taxable sold the aforesaid seventy-two shares of Cuban Tobacco Company at $5.75 per share, which netted him $405.71; and claimed that by virtue of the sale of this seventy-two shares of Cuban Tobacco Company, he sustained a loss equal to the full amount originally paid for the eleven hundred shares of common stock of Havana Commercial Company, or $30,000 and also a loss equal to the amount originally paid for one-sixth of the two hundred shares of

preferred stock of Havana Commercial Company, or $2300, making a total of $32,300, less $405.71, the said net amount received from the sale of the said seventy-two shares of stock of Cuban Tobacco Company, making an actual loss of $31,394.20. This last amount taxable claimed he was entitled to deduct from his annual income for the year 1924. To maintain this contention it is necessary to trace the identity of said original eleven hundred shares of common stock of Havana Commercial Company, and of said original two hundred shares of preferred stock of Havana Commercial Company through the transaction by which the stock originally purchased in Havana Commercial Company was exchanged for stock in Havana Tobacco Company, and then through the reorganization period of Havana Tobacco Company when its stock, both preferred and common, was exchanged for common stock of Cuban Tobacco Company. The State School Tax Department takes the position that the entire amount of preferred and common stock of Havana Tobacco Company having been exchanged for common stock of Cuban Tobacco Company, said preferred and common stock of Havana Tobacco Company lost its identity and became all common stock of Cuban Tobacco Company. It determines the loss accruing from the sale of seventy-two shares of Cuban Tobacco Company stock, by taking the total amount of the original cost of both preferred and common stock of Havana Commercial Company, namely $43,800 as the cost basis for the one hundred and seventy-two shares of Cuban Tobacco Company and thus estimating the cost of the seventy-two shares sold to be $18,334.80. Deducting from this the amount received from the sale of said seventy-two shares, being $405.71, it fixed the amount of said loss at $17,929.09. This makes a difference between the amount of loss claimed by the taxable and that arrived at by the State School Tax Department of $13,965.20. The finding of the State School Tax Department was sustained by the State School Tax Board, after an oral hearing, which was continued for seven days pending further information as to the identity of the stock. The following letter from Cuban Tobacco Company was produced at said hearing:

"January 8, 1927.

"In response to yours of the 6th concerning stock of this company in the name of Hon. Willard Saulsbury, as stated in our letter of the 5th inst. Mr.

Saulsbury exchanged Havana Tobacco Company securities as follows: 120 shares Preferred, 520 shares Common, receiving therefor 172 shares of common stock of the Cuban Tobacco Co. (the basis being one for one Havana Tobacco Co. preferred and one for ten Havana Tobacco Co. common).

"Two certificates of common stock of this company were issued, one for 100 shares and one for 72 shares. It is therefore clear that the certificate for 72 shares of Cuban Tobacco Co. common stock represented the exchange of 20 shares Havana Tobacco Company preferred and the balance, viz. 52 shares was for 520 shares Havana Tobacco Company common.

"Very truly yours,

"[Signed]   J. L. Hardin, Auditor."

Upon an appeal being taken from the decision of the State Tax Board to the Superior Court the same was affirmed. Six assignments of error were filed, but the court is required to consider only three of them, which are as follows:

"(2)   That the court erred in deciding that it was impossible to establish from the record the identity of the seventy-two shares of Cuban Company that was sold with the eleven hundred shares of Havana Commercial Company originally bought."

Taxable attempted to show this identity by claiming that four hundred and forty shares of the common stock of Havana Tobacco Company represented the eleven hundred shares of Havana Commercial Company, and the remaining eighty shares of said common stock together with the one hundred and twenty shares of its preferred stock, represented the two hundred shares of preferred stock of Havana Commercial Company. He further claimed that forty-four shares of the stock of Cuban Tobacco Company represented four hundred and forty shares of Havana Tobacco Company common and the remaining one hundred and twenty-eight shares of stock of the Cuban Company represented the remaining eighty shares of common and one hundred and twenty shares of preferred stock of the Havana Tobacco Company.

He nowhere explains, however, how he arrived at the conclusion that four hundred and forty shares of the five hundred and twenty shares of Havana Tobacco Company stock represented the eleven hundred shares of common stock which he originally bought in Havana Commercial Company. No basis upon which the exchange from Havana Commercial stock to Havana Tobacco stock

was made is given; therefore, how is it possible to arrive at the above-stated conclusion? The plan for reorganization of Havana Tobacco provided that one share of the common stock of the Cuban Tobacco Company should be given for every ten shares of the common stock of Havana Tobacco Company, but it is not shown that this plan was adhered to in the exchange of Havana Commercial stock for Havana Tobacco stock. Is there any more reason for saying that forty-four shares of Cuban Tobacco stock represents four hundred and forty shares of Havana Tobacco stock than there would be for fifty-two shares of Cuban Tobacco Company stock representing five hundred and twenty shares Havana Tobacco stock? The explanation made convinced neither the State School Tax Department, the State School Tax Board nor the Superior Court, and this court agrees with those decisions that the identity of the stock was not established.

"(4) The court erred in holding that the assessment made by the Tax Department was under all the circumstances just and reasonable."

This brings up the question of the fairness of the method adopted by the Tax Department in reckoning the loss incurred by the sale of the seventy-two shares of stock of the Cuban company.

After the original investment in both preferred and common stock of Havana Commercial Company, it went through two reorganizations. After the second, both preferred and common stock which had been held in the two former companies became all common stock of the Cuban Tobacco Company, and it was represented by two certificates, one for one hundred shares and the other for seventy-two shares, the issuing corporation doubtless following the established practice with stock companies of issuing separate certificates for lots of one hundred and less than one hundred shares.

There was no mark of identification upon them by which it could be learned which represented the preferred and which the common stock and thus the amount paid for the seventy-two shares sold cannot be allocated to the original cost of either particular class. It was known, however, that the original investment in both preferred and common stock was $43,800. Therefore, what more

just and reasonable method could be found of learning the loss from the sale of the seventy-two shares than by using this sum of $43,800 as a cost basis for the one hundred and seventy-two shares? It was urged that this is the same method adopted by the United States Treasury Department in fixing losses sustained by stock transactions and had been arbitrarily chosen by the State School Tax Department, but if that be true it does not prove that it is not a just and reasonable method.

This court thinks it is the best plan that could have been used to estimate the loss in this case.

"(5) That the court below erred in not holding that the identity of the shares in question had been established as a matter of fact."

A hearing was given a representative of the estate of the taxable on June 17, 1927, by the State School Tax Board and an adjournment was taken until June 24th in order to secure further information as to the identity of the seventy-two shares of stock sold. It is true the statement of the taxable was filed with the Tax Department at the time the return was made and was before the board at each hearing, but it was not binding upon the Tax Department or the board and it was their duty under the law to examine said statement carefully before placing their approval upon it. Not to take this course would very likely result in serious loss to the state, as unintentional mistakes often creep in and without an examination being made of all returns and accompanying statements they would never be discovered. There was also a letter from the Auditor of the Cuban Tobacco Company setting forth that the certificate issued by said company for seventy-two shares represented twenty shares of Havana Tobacco Company preferred and five hundred and twenty shares of Havana Tobacco Company common; but there was no explanation showing how he arrived at this conclusion, or why said certificate for seventy-two shares did not represent seventy-two shares of the whole one hundred and twenty shares of Havana Tobacco Company preferred. It was the duty of the State Tax Department in the first instance to decide from all of the information before it whether as a matter of fact, the

preferred and common stock purchased by taxable in Havana Commercial Company could be identified as the common stock of Cuban Tobacco Company as represented by the two certificates for seventy-two and one hundred shares. Having decided that it could not, that decision has also been concurred in by the Tax Board and the Superior Court.

This court holds that the finding of fact was correct. Having disposed of all of the questions upon the assignments of error, the writ of error is dismissed.

RODNEY, J. (*dissenting*): I am unable to agree with my associates in this matter, not so much because of the conclusion reached by them, but because I feel that the matters considered by the majority of this court and by the court below were not the matters in issue in the appeal from the Tax Department.

Willard Saulsbury, from 1902 to 1924, owned both common and preferred stock of the Havana Tobacco Company, the said stock having been received in 1902 upon a reorganization of the affairs of Havana Commercial Company. Upon a second reorganization in 1924, the Cuban Tobacco Company was formed to take over the assets of Havana Tobacco Company and the stock was exchanged on the basis of one share of Cuban common stock for each share of Havana Company preferred stock and one share of Cuban Company common stock for each ten shares of Havana Company common stock. Mr. Saulsbury had held 120 shares of Havana Tobacco Company preferred stock and 520 shares of Havana Company common stock. He received in exchange 172 shares of the common stock of Cuban Tobacco Company represented by one certificate for 100 shares and one for 72 shares.

This controversy arises because Mr. Saulsbury in 1924 sold the 72 shares at a considerable loss and attempted to set up this loss in his income tax return.

The Auditor of the Cuban Tobacco Company stated that the 72 shares of Cuban Company common stock was made up of 520 shares of Havana Company common stock (on the basis of 10 shares for 1) and 20 shares of Havana Company preferred stock (on the basis of one share for one). Mr. Saulsbury set off as against

the proceeds of the sale of the 72 shares of Cuban Company stock his entire investment for the original common stock and one-sixth of his investment for the preferred stock. Here is where the difficulty started.

To me it is apparent from the record that the Tax Department for the purposes of the case then before it assumed the correctness of the identification of the stock as claimed by Mr. Saulsbury, but held that because both common and preferred stock of the Havana Company were exchanged for only common stock of the Cuban Company, that then the identity of the stock was, as a matter of law, lost and could not be shown. In the original explanation of the disallowance of the claim of loss (after stating the facts exactly as claimed by Mr. Saulsbury) the Tax Commissioner said:

"However, since the entire common and preferred stock of Havana Tobacco Company was exchanged for common stock of Cuban Tobacco Company, the preferred and common stock of Havana Tobacco Company lost their identity and became all common stock of Cuban Tobacco Company."

An assessment of additional tax was made and upon application a hearing was had on June 17, 1927, and the record as kept by the Tax Department shows these entries:

" * * * Tax Department claims that in the case of a sale where there have been several reorganizations the original shares of stock lose their identity when merged with other shares of stock."

"Contentions of Taxable: Taxpayer's contention is that the shares of stock sold can be identified and wants tax adjusted on this basis."

To me there is a strong inference in these minutes that the Tax Board was not interested in the identity of the stock as a matter of fact, but solely with the question as to whether such identity could be shown as a matter of law. This inference is made a certainty at the next meeting.

On June 24, 1927, another meeting was held to consider the "question of basis to be used for determining gain or loss from the sale of stock acquired through reorganization."

The decision of the Board was

"Taxpayer's contention that the shares of stock sold can be identified denied and the commissioner's decision sustained that such shares of stock lose their identity at the time of the reorganization."

The estate of Mr. Saulsbury was notified of the decision of the Board in these words:

" * * * Tax Board decided that the identity of the shares could not be established."

Nothing could be more apparent to me from the record than the fact that the Tax Board decided one thing and one thing alone —that as a matter of law, the identity of the shares could not be shown because on reorganization both common and preferred stock of one company were exchanged for common stock alone of another company. Having determined this question in the negative the actual identity of the stock as a matter of fact was not considered and the assessment of additional tax followed as a matter of course.

This question of law as to whether or not the identity of the stock can be shown after a reorganization and the exchange of stock as above set out (assuming that the ability to show such identity exists) was, in my opinion, the only question properly before the Superior Court on appeal as it is certainly the only question argued in this court. The Superior Court did not discuss this question in its opinion and therefore, presumably, did not consider it, but devoted itself exclusively to the question as to whether or not the identity of the shares of stock had been shown as a matter of fact.

It appears to me that the Superior Court has affirmed the Tax Board in the imposition of additional assessment of tax on the ground that the identity of the shares involved had not been shown as a fact while the Tax Board itself, by its record, had assumed the identity of the shares as a matter of fact, but had denied that such identity could be considered as a matter of law.

For this reason, I am of the opinion that the order of the Superior Court should be reversed and the matter remanded to that court.

I express no opinion as to whether the shares of the Cuban Tobacco Company involved in this case have been actually identified with those of the Havana Tobacco Company and more especially whether this actual identification relates further back to the shares of Havana Commercial Company because I conceive that such questions are not before this court.